UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Erika Cromoty,** | |
| *Plaintiff*, | |
| | Case No:        8:20-cv-2941 |
| v. | |
| **Williams, Rush & Associates, LLC,** *and* | **JURY TRIAL DEMANDED** |
| **Sean Williams,** | |
| *Defendants*. | |

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** the Plaintiff, **Erika Cromoty** ("**Ms. Cromoty**"), by and through

her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Williams, Rush &**

**Associates, LLC** ("**WRA**"), and **Sean Williams** ("**Williams**") (collectively, "**the**

**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. Cromoty against the Defendants for

violations of the ***Fair Debt Collection Practices Act***, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**")

and the ***Florida Consumer Collection Practices Act***, Section 559.55, Florida Statutes *et.*

*seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Ms. Cromoty's FDCPA claims pursuant to

15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.     This Court has supplemental jurisdiction for Ms. Cromoty's FCCPA claim pursuant to 28 U.S.C. § 1367 and Section 559.77(1) Florida Statutes.

4.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

5.     **Ms. Cromoty** is a natural person residing in the City of Tampa, Hillsborough County, Florida and a *Consumer* as defined by the FDCPA, 15 U.S.C. §1692a(3) and the FCCPA, Section 559.55(8), Florida Statutes.

6.     **WRA** is a Texas limited liability company with a primary business address of 4144 N. Central Expressway, Ste. 945, Dallas, TX 75204.

7.     WRA is registered to conduct business in the State of Florida, where its registered agent is **Northwest Registered Agent, LLC, 7901 4th Street N., Suite 300, St. Petersburg, FL 33702.**

8.     **Williams** is the managing member and founder of WRA.

9.     According to Williams' LinkedIn profile, has been involved in the collections industry since 2003.

10.     Williams is involved in the day-to-day operations of WRA and is the individual responsible for the determination and implementation of the policies and procedures of WRA.

11.     The Defendants are *Debt Collectors* within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that the Defendants use an instrumentality of commerce, including the U.S. mail and / or

telephone, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12.     WRA was licensed to collect consumer debts and held a Florida Consumer Collection Agency License ("**CCA License**") issued by the Florida Office of Financial Regulations, license number CCA9903284; the CCA License expired on December 31, 2014 and has not been renewed or reinstated as of the date of this filing. **SEE PLAINTIFF'S EXHIBIT A.**

13.     Section 559.553(1), Florida Statutes, states: "A person may not engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration."

## FACTUAL ALLEGATIONS

14.     Ms. Cromoty allegedly incurred a debt related to tuition expenses at ***Tampa Truck Driving School*** ("**Tampa Truck**") in Tampa, Florida (the "**alleged Debt**" or "**Debt**").

15.     The alleged Debt arose from personal educational expenses, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

16.     Around December 2019, Tampa Truck hired WRA to collect the Debt, or otherwise assigned the Debt to WRA for collection.

## WRA Uses Illegal Threats To Attempt To Collect Debt

17.     Around April 2020, WRA's collection agents began calling Ms. Cromoty on her cell phone.

18.     Ms. Cromoty's caller ID showed that the calls were coming from 469-676-1829, which is a phone number owned or utilized by WRA.

19.     During WRA's calls, their collection tactics varied slightly in style and form, but were clearly derivatives of the same script:

> We'd love to help you settle this debt voluntarily, but if you don't pay now, your driver's license will be suspended for non-payment of debt, WRA will cause a negative entry to appear on your "Drive-A-Check" report from HireRight, court judgment will be entered against you and your wages will be garnished, and a complaint will be filed against you with the Department of Transportation.

20.     WRA thus threatened, on numerous occasions:

   a.   To have Ms. Cromoty's driver's license suspended for nonpayment of the Debt;

   b.   To report the Debt to HireRight and cause it to appear on Ms. Cromoty's "Drive-A-Check" ("**DAC**") report;

   c.   To obtain judgment and garnish Ms. Cromoty's wages, *without due process*;

   d.   To file a complaint with the Department of Transportation ("**DOT**") for nonpayment of an alleged debt; and

   e.   To contact Ms. Cromoty's current employer, as well as her relatives, and disclose her status as an alleged debtor to them.

21.     In fact, WRA did call Ms. Cromoty's relatives, including her mother, her cousin and other family members.

22.     During these phone calls, WRA disclosed Ms. Cromoty owed a debt and further warned Ms. Cromoty's relatives she faced "serious legal repercussions" if Ms. Cromoty did not pay the so-called debt right away.

23.     More commonly called a "DAC report," the Drive-a-Check tool by HireRight is utilized by companies which employ professional drivers to screen prospective applicants.

24.     The DAC report provides details on drug and alcohol problems, accidents, length of time employed in professional driving, eligibility for rehire with past employers, and other relevant information that is dispositive towards hiring.

25.     A great number of trucking companies and other entities which employ professional drivers use DAC reports to pre-screen prospective applicants.

26.     Negative information on an applicant's DAC report creates significant impediments to obtaining future employment.

27.     A DAC report does not, however, contain information about a driver's consumer debts or loans.

28.     Therefore, the debt that WRA's agent sought to collect from Ms. Cromoty could never have been "placed" on her DAC Report, as WRA claimed it could.

29.     Beyond this, WRA is not a trucking company, and therefore cannot furnish any information to HireRight's DAC database.

30.     At no point did WRA intend, much less have the ability to report any information to HireRight.

31.     While the phrase "DAC report" is not well known to the general population, it is critically important to employees within the professional driving industry.

32.     The Defendants intentionally used the industry-specific "DAC Report" phrase specifically to frighten consumers like Ms. Cromoty into paying a debt and to falsely cause them to believe their careers were on the line.

33.     WRA empty threats to report negative DAC information were simply a ruse to scare consumers like Ms. Cromoty into paying debts.

34.     Many consumers, and especially unsophisticated consumers, would be cajoled into paying a debt, even if disputed, if a debt collector appeared to have the knowledge, ways and means to electronically blacklist them from being able to obtain work.

35.     WRA also had no ability, nor intention, to cause Ms. Cromoty's driver's license to be suspended.

36.     No Florida law allows for a consumer's driver's license to be suspended for an unsecured consumer credit transaction like a private school's tuition.

37.     Likewise, the DOT does not accept "complaints" from debt collectors about unpaid tuition from a private school, nor does the DOT take action against licensed drivers who have allegedly unpaid private school tuition.

38.     The Defendants intentionally and willfully made false representations about what legal rights could be invoked and enforced in the event of nonpayment.

39.     The Defendants are not attorneys and had no authority, nor intention, of suing Ms. Cromoty for any alleged unpaid debt.

40.     Yet, WRA's name – Williams, Rush & Associates – mimics the nomenclature commonly used by law firms and *sounds like* a law firm to an unsophisticated consumer, especially when accompanied by corresponding threats of obtaining a judgment and wage garnishment.

41.     WRA has been sued multiple times by consumers throughout the United States over a period of years for making substantially similar threats, in contravention to the FDCPA. See, e.g., *Monica N. Howard vs. Williams, Rush & Associates, LLC*, Case 3:17-cv-02799-D, N.D. Texas, October 12, 2017 (threatening to suspend driver's license over unpaid debt).

42.     At no point in any of WRA's communications did its agents identify themselves as a debt collector or that the communication was from a debt collector.

### WRA's Addition of Interest or Fees to the Debt

43.     In its collection efforts, WRA unilaterally added $500 of additional fees and/or costs to the principal balance it claimed Ms. Cromoty owed. WRA reported the debt to Experian Information Solutions ("Experian"), one of the largest nationwide credit reporting agencies in the United States.

44.      In its report, WRA claimed that while the original amount of the debt was $1,048, the amount now due was $1,548 – nearly a 50% increase. **SEE PLAINTIFF'S EXHIBIT B.**

45.     No contract or agreement exists between Ms. Cromoty and Tampa Truck Driving School which would authorize $500 of collection fees.

46.     No Florida statute authorizes the addition of interest and / or fees on an unsecured loan, absent written agreement to the contrary.

47.     The alleged Debt has not been reduced to judgment.

48.     WRA thus lacked any basis in contract or law for the addition of $500 in interest and / or fees to the alleged Debt.

49.     Nonetheless, WRA reported this data to Experian despite knowing the information was false and that even assuming, *arguendo*, Ms. Cromoty somehow owed the $1,048, under no circumstances did she owe $1,548.

### Additional Statutory Violations

50.     At all times relevant, the Defendants lacked a valid Florida CCA License, a prerequisite to legally collect consumer debts in Florida.

51.     Defendants attempted to collect the Debt, which originated from a school in Tampa, Florida, after it was attended by a Florida resident, despite lacking a valid Florida CCA License.

52.     WRA also did not mail, within five days of initial communication, written notice containing:

(a) the amount of the Debt;

(b) the name of the creditor to whom the Debt is owed;

(c) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector;

(d) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the Debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and,

(e) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

53.     On information and belief, the collection tactics utilized by WRA and its agents as described above were implemented by Williams, who is responsible for managing WRA's collection agents.

54.     Williams is thus jointly and severally liable with WRA.

55.     Ms. Cromoty has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees.

**COUNT I**
**DEFENDANTS' VIOLATIONS OF THE FDCPA**

56.     Ms. Cromoty adopts and incorporates paragraphs 1 – 55 as if fully restated herein.

57.     Williams and WRA violated **15 U.S.C. § 1692e and 1692e(10)** by making false and/or deceptive representations in connection with the collection of a debt and/or to obtain information about a consumer when WRA, acting pursuant to policies put in place by Williams and under his control:

(a)  claimed WRA could add $500 of fees to a debt without any contractual or legal basis;

(b)  reported this inflated balance to Experian, a nationwide CRA;

(c)  claimed WRA could collect a debt which originated in Tampa, Florida from a Florida resident without being legally licensed to collect debt in Florida;

(d)  claimed that WRA could cause a negative entry to appear on Ms. Cromoty's DAC report, when WRA had no such ability or intention;

(e)  claimed that WRA could simply "file a judgment" which would result in "wage garnishment;"

(f)  claimed that WRA would file a complaint with, presumably, the Florida DOT;

(g)  claimed, or otherwise implied to an unsophisticated consumer, that WRA was a law firm, when it was and is not; and,

(h)  claimed that it could, and would, and did contact Ms. Cromoty's relatives and disclose her status as a debtor to them.

58.    The Defendants violated **15 U.S.C. § 1692e(2)(a)** when they made a false representation about the character, amount, or legal status of the Debt by claiming an additional $500 of fees was owed.

59.    The Defendants violated **15 U.S.C. § 1692e(3)** when they utilized the name "Williams, Rush and Associates" and orally implied WRA was a law firm, claiming it could cause legal action to be filed – something only an attorney-at-law could do – and failed to otherwise disclose WRA was a debt collector, not a law firm.

60.     The Defendants violated **15 U.S.C. § 1692e(5)** when they, in phone calls, threatened action not intended to be taken - *e.g.,* legal action to collect the Debt and garnishment of wages to effect validation of a debt, wage garnishment without due process, and the appearance of a negative entry on a DAC report regarding Ms. Cromoty.

61.     The Defendants violated **15 U.S.C. § 1692e(5)** when they claimed they could cause Ms. Cromoty's driver's license to be suspended for non-payment of an unsecured debt.

62.     The Defendants violated **15 U.S.C. § 1692e(8)** when they communicated credit information which was false, and should have been known to be false, when they inflated the supposed past-due balance by nearly 50%, adding $500 of apparent costs or fees.

63.      The Defendants violated **15 U.S.C. § 1692e(11)** when they utilized the name "Williams, Rush and Associates" and orally implied WRA was a law firm, claiming it could cause legal action to be filed – something only an attorney-at-law could do – and failed to otherwise disclose WRA was a debt collector attempting to collect a debt, and, in its initial communication, that any information obtained would be used for such purpose.

64.     The Defendants violated **15 U.S.C. § 1692f** when they used unfair and/or unconscionable means to collect or attempt to collect a debt, when Williams, as managing member of WRA, instructed his agents to threaten negative reporting to DAC – something Williams knows is impossible for WRA to actually do, yet nonetheless effective in collecting debt, since the consumer would believe her reputation would be permanently tarnished by such a report.

65.     The Defendants violated **15 U.S.C. § 1692f** when they used unfair and/or unconscionable means to collect or attempt to collect a debt, when Williams, as managing member of WRA, instructed his agents to threaten wage garnishment, legal action, and driver's license suspension, despite knowing that WRA has no ability to carry out such threats; nonetheless, Williams knows that the mere threat of such repercussions is an effective crowbar to pry payment from a consumer.

66.     The Defendants also violated **15 U.S.C. § 1692f(1)** by adding $500 of "fees" to a debt without justification in contract or law, and by collecting debt for a business with a location in Tampa, Florida, regarding a Florida resident, without the legally-required license enabling them to do so.

67.     The Defendants violated **15 U.S.C. § 1692g(a)** when they failed to mail written notice to Ms. Cromoty within five days of initial communication, stating:

    (a) the amount of the Debt;

    (b) the name of the creditor to whom the Debt is owed;

    (c) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector;

    (d) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the Debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and,

(e) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

68. The Defendants' actions render them liable for the above-stated violations of the FDCPA, and Ms. Cromoty is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Cromoty respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and for her as follows:

a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

**COUNT II**
**DEFENDANTS' VIOLATIONS OF THE FCCPA**

69. Ms. Cromoty adopts and incorporates paragraphs 1 – 55 as if fully restated herein.

70. The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted rights which do not exist, which the Defendants knew did not exist, specifically: (1) the right to collect a consumer debt in Florida without first acquiring a CCA License from the Florida Office of Financial Regulation; (2) the right to summarily cause wage garnishment to occur, without due process; (3) the right to cause Ms. Cromoty's driver's license to be suspended; (4) the right to insert negative information into a DAC report,

which WRA has no ability to do; and, (5) the right to add $500 in collection fees to the Debt, with no basis in contract or law for doing so.

71.     The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted a debt was legitimate when they knew it was not. Specifically, the Defendants added their own, bogus, $500 "collection fee" to the balance of the purported debt.

72.     The Defendants' actions were willful and intentional in that they were part of a strategy designed to maximize their profits at the expense of the consumer and her family.

73.     By their conduct, the Defendants are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Ms. Cromoty respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and otherwise solely, for:

a.     Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.     Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.     Punitive damages for the Defendants' blatantly illegal and reprehensible conduct pursuant to Section 559.77(2), Florida Statutes;

d.     Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Ms. Cromoty pursuant to Section 559.77(2), Florida Statutes;

e.     Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

f.     Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Cromoty demands a jury trial on all issues so triable.

Respectfully submitted on December 9, 2020, by:

SERAPH LEGAL, P. A.

/s/ *Bridget L. Dow*
Bridget L. Dow
Florida Bar No.: 1022866
BDow@seraphlegal.com
/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
tbonan@seraphlegal.com
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## EXHIBIT LIST

A       WRA's Expired Florida CCA License

B       Plaintiff's Experian Consumer Disclosure September 11, 2020- Excerpt William, Rush and Associates